# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL E. HOLT, | 1:09-CV-00800-AWI-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF |
| v. | CERTAIN CLAIMS AND DEFENDANTS |
| NICHOLAS, et al., | (ECF NO. 21) |
| Defendants. | OBJECTIONS DUE WITHIN 30 DAYS |

**Findings And Recommendations**

I. <u>**Background**</u>

    A.    **Procedural History**

Plaintiff Virgil E. Holt ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on May 4, 2009. The Court screened Plaintiff's complaint and found that it stated cognizable claims. On November 5, 2009, Plaintiff filed a motion to amend his complaint. The Court granted Plaintiff's motion. On December 28, 2009, Plaintiff filed a motion requesting leave to file a second amended complaint. Because the Court had yet to screen Plaintiff's first amended complaint, the Court granted Plaintiff leave to file a second amended complaint. Plaintiff's second amended complaint, lodged December 28, 2009 and filed April 8, 2010, is presently before the Court for screening.

    B.    **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

      A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*

## II.     Summary Of Second Amended Complaint

      Plaintiff was previously incarcerated at California Correctional Institution ("CCI") in Tehachapi, California, where the events giving rise to this action occurred.  Plaintiff names the following twenty-eight Defendants: correctional officer ("C/O") R. Nicholas, C/O A. Holguin, sergeant J. Ortega, sergeant L. Machado, C/O J. Juden, C/O G. Adame, C/O F. Rivera, C/O R. Valverde, C/O D. Coontz, captain D. Zanchi, associate warden M. Carrasco, medical technical assistant M. Bubbel, lieutenant K. Prior, C/O J. Tyree, lieutenant Large, sergeant Soto, sergeant Yubeta, sergeant Worrell, doctor Vo, C/O Knight, C/O T. Crouch, C/O Pinkerton, C/O Valasco, correctional counselor II T. Nipper, C/O C. A. Eubanks, C/O G. Hopkins, C/O P. Stevenson, and lieutenant L. Lundy, and Does 1 through 5 and 7 through 10.[1]

      An examination of Plaintiff's second amended complaint indicates that Plaintiff alleges

---

[1]   Plaintiff omits Doe 6 without explanation.

2

six separate incidents of constitutional violations: (1) Counts 1 through 12, use of excessive force on April 9, 2007 and subsequent failure to decontaminate Plaintiff after exposure to pepper spray; (2) Count 13, denial of due process for gang validation, also on April 9, 2007; (3) Count 14, deliberate indifference in March and April of 2006; (4) Count 15, denial of due process on November 2008 regarding a rules violation report; (5) Count 16, retaliation on March 2009 for filing inmate grievances; and (6) Count 17, retaliation in August 2009.  Count 17 is related to Counts 1 through 12 because it involves a common defendant retaliating against Plaintiff for filing inmate grievances regarding actions listed in Counts 1 through 12.  Incident 1 and 6 are substantially related to each other; Incidents 2 through 5 are not related.

       The Court will recommend dismissal of Incidents 2 through 5 from this action.  Pursuant to Federal Rule of Civil Procedure 20(a)(2), defendants may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences and (B) any question of law or fact common to all defendants will arise in the action."  Incidents 2 through 5 arise from different occurrences and involve different questions of fact or law when compared to Incidents 1 and 6.  The Court will thus dismiss Incidents 2 through 5 from this action without prejudice to refiling in a separate action.

       Because the only actions alleged against Defendants Crouch, Hopkins, Eubanks, Nipper, Stevenson, and Lundy concern Incidents 2 through 5, the undersigned recommends that these Defendants also be dismissed from this action without prejudice.  The Court now turns to screening Plaintiff's claims regarding Incidents 1 and 6.

       **A.**    **Use Of Excessive Force**

       Plaintiff alleges the following.  On or about April 9, 2007, Plaintiff was sitting on his bunk when he heard the sound of officers running towards Plaintiff's cell.  (Second Am. Compl. ("SAC") ¶ 36.)  Plaintiff's cell mate was attempting to flush some pruno kicker down the toilet.  (SAC ¶ 37.)  Defendants Nicholas, Holguin, and Ortega appeared at Plaintiff's cell door, and Defendants Nicholas and Holguin began to spray Plaintiff's cell with pepper spray.  (SAC ¶ 39.)  Defendants ordered Plaintiff and his cell mate to get down and cuff up.  (SAC ¶ 40.)  Plaintiff and

1  his cell mate complied, but Defendants Nicholas and Holguin continued to spray Plaintiff with
2  pepper spray.  (SAC ¶¶ 41-43.)  Defendant Ortega then told Defendant Holguin to deploy a T-16
3  pepper spray gas grenade into the cell despite Plaintiff and his cell mate being prone on the floor.
4  (SAC ¶ 44.)  Plaintiff and his cell mate were in the cell for two minutes for the pepper spray
5  grenade to take effect.  (SAC ¶ 47.)  Plaintiff had difficulty breathing, and his skin was burning
6  so severely Plaintiff felt like it was melting.  (*Id.*)

7       Defendants Holguin and Nicholas wrote incident and rules violation reports charging
8  Plaintiff with resisting a peace officer.  (SAC ¶ 51.)  Defendants L. Machado, J. Juden, and Doe
9  1 stood by and did nothing to intervene as Defendants Nicholas, Holguin, and Ortega applied the
10 unnecessary use of chemical force.  (SAC ¶ 52.)  Defendant Machado ordered Plaintiff to remove
11 his clothes and crawl backwards towards the cell door.  (SAC ¶ 53.)  Defendants Machado and
12 Juden dragged Plaintiff out of his cell by his ankles, scraping the skin off both of Plaintiff's
13 knees.  (SAC ¶ 55.)  Defendant Nicholas then threatened to shoot someone; Plaintiff assumes this
14 was because of hostility towards black inmates because of attempted assault on a correctional
15 officer by a black inmate.  (SAC ¶¶ 31, 56.)

16      Plaintiff alleges Defendants Carrasco and Zanchi authorized the use of force against
17 Plaintiff.  (SAC ¶ 57.) Defendants Carrasco and Zanchi were aware of the abusive conduct and
18 prior acts of excessive force by Defendants R. Nicholas and A. Holguin against inmates but
19 repeatedly failed to take corrective action against them or control their behavior.  (SAC ¶ 58.)

20      Plaintiff asked Defendants Machado, Juden, Ortega, Nicholas, Holguin, and Doe 1 to
21 provide Plaintiff with decontamination, but they ignored Plaintiff.  (SAC ¶ 61.)  Plaintiff was
22 escorted outside the housing unit by Defendant Valverde.  (SAC ¶ 63.)  Plaintiff informed
23 Defendant Valverde that he had been pepper-sprayed and had not been decontaminated, and had
24 difficulty breathing and was severely burning.  (*Id.*)  Defendant Valverde ordered Plaintiff to the
25 ground, and stated that if Plaintiff moved, he would bash Plaintiff's head in.  (SAC ¶ 64.)
26 Defendant Valverde ignored Plaintiff's request for decontamination.  (SAC ¶ 65.)

27      Plaintiff and his cell mate were escorted to the clinic holding cell, where the sink was
28 clogged and filled to the rim with foul water, and the faucet head was under the rim of the sink.

(SAC ¶ 66.) Plaintiff informed Defendants Rivera, Adame, Valverde, and Coontz upon their entering the holding area that the sink was clogged and Plaintiff needed to decontaminate. (SAC ¶ 67.) Defendants ignored Plaintiff's request. (SAC ¶ 68.)

    Over the next few hours, Plaintiff informed Defendant Does 2 through 5 that he had not been decontaminated after exposure to pepper spray and a T-16 grenade and that he was severely burning and in need of decontamination. (SAC ¶ 69.) Defendants ignored Plaintiff's request for decontamination. (SAC ¶ 70.) Plaintiff was then seen by Defendant Bubbel for a medical incident/injury review report. (SAC ¶ 71.) Plaintiff informed Defendant Bubbel that he had been pepper-sprayed and was in need of decontamination. (SAC ¶ 73.) Defendant Bubbel ignored Plaintifff's request and did nothing to provide Plaintiff with any medical attention. (SAC ¶ 74.) Plaintiff saw Defendant Vo enter the clinic area and informed him that he had been peppersprayed and was in need of decontamination. (SAC ¶ 76.) Defendant Vo ignored Plaintiff's request. (SAC ¶ 77.)

    Plaintiff was later interviewed in the afternoon by Defendants Crouch, Tyree, and Hopkins. (SAC ¶ 78.) Plaintiff informed them that he had not been decontaminated, and that the use of the pepper-spray and grenade in the morning was severely burning him. (SAC ¶ 79.) After finishing their investigation, Defendants left the clinic holding area and did nothing to provide Plaintiff with decontamination. (SAC ¶ 82.)

    After several hours without decontamination, Plaintiff began screaming in agony, and other inmates yelled for someone to help him. (SAC ¶ 85.) Defendant Doe 7 came but did nothing. (SAC ¶ 87.)

    Defendants Knight, Pinkerton, and Valasco then came by. (SAC ¶ 89.) Plaintiff informed them that he was in need of decontamination. (SAC ¶ 90.) Defendants ignored Plaintiff's request for assistance. (SAC ¶ 91.)

    Defendants Worrell, Soto, Yubeta, and Large then came by the clinic holding area to find out why Plaintiff was screaming. (SAC ¶ 94.) Plaintiff showed Defendants that his skin was a purplish, burgundy color from the exposure to the pepper-spray without decontamination. (SAC ¶ 97.) Defendants ignored Plaintiff's request; Defendant Soto told Plaintiff he should use the

5

toilet water if he wanted decontamination. (SAC ¶¶ 100, 101.) Plaintiff and his cellmate were being held without any clothes. (SAC ¶ 102.)

At approximately 9 PM, Defendant Prior entered the clinic holding area. (SAC ¶ 108.) Defendant Prior ordered Plaintiff and his cell mate to receive some paper boxers. (SAC ¶ 109.) Plaintiff requested that he be provided with decontamination, but Defendant Prior ignored Plaintiff's request. (SAC ¶¶ 111, 112.)

Plaintiff was later placed into administrative segregation (ad-seg). (SAC ¶ 113.) Plaintiff informed Defendants Does 8 and 9 that he was still severely burning after fourteen hours and requested decontamination; Defendants ignored Plaintiff's request. (SAC ¶¶ 114, 115.) Plaintiff subsequently spent the night sleeping on his cloth mattress, bedding, and sheets while still covered in chemical agents. (SAC ¶ 117.) The next day, Plaintiff was provided a ten-minute shower. (SAC ¶ 118.) Plaintiff informed Defendant Doe 10 that Plaintiff had slept on his mattress and bedding and needed new linens. (SAC ¶¶ 118, 119.) Defendant Doe 10 refused to provide Plaintiff with new linens because they were issued only every two weeks. (SAC ¶ 120.) Plaintiff thus had to sleep on his contaminated bedding, causing Plaintiff to continue to burn from the effects of the chemical agents until his release from ad-seg on April 19, 2007. (SAC ¶ 121.)

Plaintiff submitted a medical request on April 11, 2007 to Defendant Vo, because his skin had begun to blister and peel. (SAC ¶ 122.) Plaintiff's requested was ignored. (SAC ¶ 122.) Plaintiff alleges supervisory liability against Defendants Carrasco and Zanchi for authorizing the use of force and failing to supervise, resulting in Plaintiff's exposure to chemical agents for ten days. (SAC ¶¶ 126, 127.)

**B.     Retaliation**

On August 24, 2009, Defendant Holguin interviewed Plaintiff regarding an incident between Plaintiff and another inmate. (SAC ¶ 232.) Defendant Holguin told Plaintiff that he was aware of Plaintiff's lawsuit filed against him regarding the 2007 excessive force incident and would make Plaintiff's life worse. (SAC ¶ 238.) Plaintiff was placed in ad-seg pursuant to Defendant Holguin's confidential memo which stated that Plaintiff faced violence if released into

general population.  (SAC ¶ 240.)  Plaintiff was found not guilty of the charged RVR 115.  (SAC ¶ 243.)  Twenty-four hours later, relying upon the memo and a submitted statement in support, Plaintiff's verdict was changed to guilty.  (SAC ¶ 244.)

### III. Analysis

#### A. Eighth Amendment - Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  *Id.* (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).

Plaintiff alleges a cognizable excessive force claim against Defendants R. Nicholas, A. Holguin, and J. Ortega.  Plaintiff also alleges a cognizable claim against Defendants L. Machado, J. Juden, and Doe 1 for failure to intervene.

#### B. Eight Amendment - Deliberate Indifference

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong.  First,

the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000). A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the plaintiff must make a subjective showing that the prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Id.* at 837; *Johnson*, 217 F.3d at 734. Delays in providing showers and medical attention for inmates suffering from harmful effects of pepper spray may violate the Eighth Amendment. *Clement v. Gomez*, 298 F.3d 898, 905-06 (9th Cir. 2002).

Here, Plaintiff states a cognizable claim against Defendants R. Nicholas, A. Holguin, J. Ortega, L. Machado, J. Juden, G. Adame, F. Rivera, R. Valverde, D. Coontz, M. Bubbel, K. Prior, J. Tyree, Large, Soto, Yubeta, Worrell, Vo, Knight, T. Crouch, Pinkerton, Valasco, and Does 1 through 5 and 7 through 10 for deliberate indifference to a serious medical need.

**C.     Retaliation And Due Process**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Here, Plaintiff alleges a cognizable retaliation claim against Defendant Holguin.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a

8

liberty interest for which the protection is sought. *Id.* Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. *See id.* With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The procedural due process for disciplinary detention of a prisoner are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 556.

Plaintiff fails to state a cognizable due process claim. Plaintiff has failed to plead a liberty interest in remaining free of ad-seg. Even assuming Plaintiff plead a liberty interest, Plaintiff fails to plead that he was not provided with procedural due process. Plaintiff complains that later evidence was used to reverse a finding of not guilty to guilty. This does not demonstrate Plaintiff was denied procedural due process.

**D.     Supervisory Liability**

Under § 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). The Supreme Court recently emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 1948. Rather, each government

official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. *Id.* at 1948-49. Thus, a supervisor is only liable for constitutional violations by subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

Here, Plaintiff has alleged a cognizable claim for supervisory liability against Defendants Carrasco and Zanchi for having knowledge of Defendant Holguin and Nicholas's history of excessive force against inmates and failing to discipline them. Plaintiff does not state a cognizable supervisory liability claim for authorizing use of force and failing to supervise. Such a pleading indicates at most respondeat superior liability, which is not cognizable under § 1983.

## IV.    **Conclusion and Recommendation**

Based on the foregoing, the undersigned HEREBY RECOMMENDS the following:

1. Plaintiff's claims in Counts 13 through 16 be DISMISSED from this action without prejudice;

2. Defendants Crouch, Hopkins, Eubanks, Nipper, Stevenson, and Lundy be DISMISSED from this action without prejudice; and

3. This action proceed on Plaintiff's second amended complaint against (a) Defendants R. Nicholas, A. Holguin, J. Ortega, L. Machado, J. Juden, G. Adame, F. Rivera, R. Valverde, D. Coontz, M. Bubbel, K. Prior, J. Tyree, Large, Soto, Yubeta, Worrell, Vo, Knight, T. Crouch, Pinkerton, Valasco, and Does 1 through 5 and 7 through 10 for violation of the Eighth Amendment (b) against Defendant Holguin for retaliation in violation of the First Amendment and (c) Defendants Carrasco and D. Zanchi for supervisory liability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the plaintiff may file written objections with the Court. The document should be captioned "Objections to

10

Magistrate Judge's Findings and Recommendations." The plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __July 22, 2010__                    _____/s/ Dennis L. Beck_____
                                             UNITED STATES MAGISTRATE JUDGE