UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL E. HOLT,<br><br>                    Plaintiff,<br><br>          v.<br><br>R. NICHOLAS, et al.,<br><br>                    Defendants. | Case No.: 1:09-cv-00800-SAB (PC)<br><br>ORDER REGARDING PLAINTIFF'S MOTIONS FOR ATTEDANCE OF INCARCERATED WITNESSES AT TRIAL<br><br>[ECF Nos. 164, 165, 166, 167, 168, 169] |

Plaintiff Virgil E. Holt is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

This action proceeds against Defendants Nicholas, Holguin, Ortega, Machado, and Juden for excessive force, failure to intervene and deliberate indifference to a serious medical need, and against Defendant Velasco for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

The matter is set for jury trial on January 19, 2016.

On October 1, 2016, Plaintiff filed five separate motions for the attendance of incarcerated witnesses as "eye and ear witnesses" to the alleged incidents that occurred on April 9, 2007. (ECF Nos. 164, 166, 167, 168, 169.) Plaintiff's sixth motion seeks his own attendance at trial. (ECF No. 165.)

1

Defendants filed an opposition to Plaintiff's motions on October 6, 2015. (ECF No. 171.) Defendants do not oppose the attendance of Plaintiff and inmate Garner at trial as inmate Garner was Plaintiff's cellmate and was present during the events and issue, and both he and Plaintiff can testify as to the alleged actions of Defendants. Thus, Plaintiff's motion as to his attendance (which is automatic) and the attendance of inmate Garner will be granted, and the Court will address the remaining four inmate witnesses below.

Plaintiff filed a reply on October 29, 2015. (ECF No. 173.)

# I.

# DISCUSSION

In determining whether to grant Plaintiff's motion for the attendance of his proposed witnesses, factors to be taken into consideration include (1) whether the inmate's presence will substantially further the resolution of the case, (2) the security risks presented by the inmate's presence, and (3) the expense of transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted.[1] Wiggins v. County of Alameda, 717 F.2d 466, 468 n.1 (9th Cir. 1983); see also Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994) (district court did not abuse its discretion when it concluded the inconvenience and expense of transporting inmate witness outweighed any benefit he could provide where the importance of the witness's testimony could not be determined), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

### A. Incident Inside Plaintiff's Holding Cell

Defendants correctly submit that there are two issues regarding the April 9, 2007, incident at Plaintiff's cell: (1) whether Defendants Nicholas, Holguin, Machado, and Juden used excessive force against Plaintiff, and (2) whether Defendant Ortega saw an excessive use of force and failed to intervene to stop it.

Defendants submit that the attendance of incarcerated witnesses Gil, Martinez, and Love is duplicative of the testimony by Plaintiff and inmate Garner, and therefore will result in undue delay,

---

[1] There is no evidence in the record which weighs against transporting Plaintiff's inmate witnesses due to heightened security risk, undue expense, or anticipated release from custody in the near future, and those factors are not addressed further.

waste of time, and the needless presentation of cumulative evidence. Defendants submit that inmate Robertson is no longer incarcerated, and Plaintiff must locate him and issue the necessary subpoena.

Plaintiff requests the attendance of inmate witnesses Garner, Gil, and Robertson to offer testimony at trial regarding this incident.

Defendants submit that Garner was Holt's cell partner, and was present inside the cell at the time of the alleged incident, and Garner could offer both eyewitness and ear witness testimony as to the alleged events.

Defendants oppose Plaintiff's request for the attendance of inmates Gil and Robertson on the ground that "Plaintiff provides little information regarding the specific testimony that either Gil or Robertson will provide. To the extent that Gil and Robertson would offer general testimony regarding the incident, it is difficult to determine whether their testimony would be relevant. Moreover, it appears that the testimony of Gil and Robertson would be identical to each other, and similar to the testimony of Garner and Hold, adding nothing to Holt's case. Thus, their trial testimony should be excluded as both irrelevant and cumulative."

As to inmate Ruben Gil, T-95819, Plaintiff submits the following, in pertinent part:

3. That inmate Ruben Gil was housed in California Correctional Institution, Facility 4A, Housing Unit 3, Section B, cell 101 directly neighboring plaintiff's cell on 4/9/07 when the Defendants used excessive and unnecessary force on plaintiff;

4. Inmate Gil will provide testimony that he was present (in his cell) just a couple cells away from plaintiff's cell when he heard the Defendants (Correctional Officers) arrive at Plaintiff's cell and immediately without warning start pepper spraying Plaintiff and Plaintiff's cellie;

5. Inmate Gil will also provide testimony that he could see the Defendants (Correctional Officers) in front of Plaintiff's cell as they were using the excessive and unnecessary chemical force on Plaintiff; and,

6. That the Defendant officers were giving conflicting and confusing orders after they began to spray pepper spray into plaintiff's cell and that at no time prior to spraying pepper spray into plaintiff's cell and then throwing a T-16 grenade into plaintiff's cell, did any of the Defendant Correctional Officers permit plaintiff or plaintiff's cell mate to submit to handcuffs and exit the cell prior to and while any force was being used;

3

7.     Inmate Gil will also … provide testimony that he witnessed the Defendants spraying pepper spray into Plaintiff's cell and, throwing the T-16 grenade into plaintiff's cell, and that the events testified to occurred on the morning of April 9, 2007 at CCI Facility 4A, Housing Unit 3, Section B, while plaintiff was in cell B 103, just two cells down from his cell.

(ECF No. 166, Motion at 1-2.)

As to inmate Robertson, Plaintiff submits the following:

2.     That Plaintiff is in need of inmate Robertson T-43555 to provide testimony in this matter as an unwilling direct "eye and ear" witness to the excessive force and failure to intervene and deliberate indifference claims in this matter;

3.     Inmate Robertson will provide testimony that on 4/9/07 he was a California State prisoner confined at California Correctional Institution, Facility 4A, Housing Unit 3, Section B, cell 101, plaintiff's next door neighbor when several correctional officers appeared at plaintiff's cell door and began to spray pepper spray into plaintiff's cell;

4.     Inmate Robertson will provide testimony that he could see and hear the correctional officers (Defendants) as they stood in front of plaintiff's cell door and continued to spray into plaintiff's cell;

5.     Inmate Robertson will provide testimony that the officers (Defendants) immediately and without warning began to spray pepper spray into plaintiff's cell when they arrived at plaintiff's cell door;

6.     Inmate Robertson will provide testimony that he saw the Defendant officers stop spraying pepper spray into plaintiff's cell after several seconds of continuous spraying into the cell and close the tray[-]slot, only to immediately open it back up and throw a T-16 grenade into plaintiff's cell;

7.     Inmate Robertson will provide testimony that the defendants never permitted plaintiff or plaintiff's cell mate an opportunity to submit to handcuffs and safely exit the cell before they opened the tray[-]slot back up and threw the T-16 into plaintiff's cell;

8.     Inmate Robertson will provide testimony that he observed the Defendants reach down and grab plaintiff's ankles and drag plaintiff onto the their by plaintiff's ankles after plaintiff's cell door was opened;

[9].     Inmate Robertson will provide testimony that he watched the Defendants grab plaintiff's ankles and drag plaintiff onto the tier, he observed that plaintiff was not resisting the officers or posing any type of threat to the officers;

[10].     Inmate Robertson will provide testimony that he overheard plaintiff inform the Defendants (officers) that plaintiff felt sick from swallowing pepper spray and that he

overheard plaintiff ask the Defendants (officers) to put plaintiff in the shower for decontamination;

[11].    Inmate Robertson will provide testimony that the shower was approximately 15 feet away from plaintiff and plaintiff's cell door and that he observed the officers walk plaintiff right past the shower as they were escorting plaintiff away from his cell and out of the B section rotunda door;

[12].    Inmate Robertson will provide testimony that as he watched the Defendants (officers) spray pepper spray into plaintiff's cell and then throw a T-16 grenade into plaintiff's cell, none of the other (Defendant) officers did anything to prevent or stop the force being used on plaintiff (and plaintiff's cellie) and stood by and watched it happen.

(ECF No. 164, Motion at 2-3.)

### B.    Incident in the Clinic Holding Cell

After Plaintiff was provided exposure to fresh air after the effects of the pepper spray, Plaintiff was escorted across the yard and placed inside a clinic holding cell.  Plaintiff claims that he was burning from the effects of the pepper spray, and screaming out in pain.  Plaintiff claims that he begged Defendant Velasco for medical help, but Velasco laughed and taunted him, and refused to obtain Plaintiff any medical care.

Defendants submit that inmate Garner was placed inside the clinic holding cell with Plaintiff, and Garner can testify with regard to the incident in the holding cell.  Defendants object, however, to the testimony by inmates Martinez and Love on the ground that their testimony would be the same as the testimony of Plaintiff and Garner.

With regard to inmate Michael Love, J-62153, Plaintiff submits the following:

2.    That plaintiff is in need of inmate Michael Love J-62152 to provide testimony in this matter as a unwilling direct "eye and ear witness to the failure to decontaminate deliberate indifference claim against Defendant Velasco in this matter.

3.    Inmate Love will provide testimony that he was a prisoner confined at California Correction Institution, Facility 4A, Housing Unit 3 on 4/9/07 when several black inmates (including himself) were removed from their cells with the use of force by California Correctional Institution correctional officers;

5

    4.    Inmate Love will also provide testimony that on 4/9/07 after being removed from his cell and while being retained in the 4A clinic holding cell 120 which was just two cells over from plaintiff's holding cell, that he heard plaintiff ask Defendant attention due to an adverse prolonged exposure to pepper spray;

    5.    Inmate Love will provide testimony that d[e]spite plaintiff's repeated requests that Defendant (correctional officer) Velasco provide plaintiff with medical attention and decontamination, the officer (Defendant Velasco) sat in his control booth and ignored plaintiff's requests and pleas for medical attention and decontamination.

    6.    Inmate Love will testify that he heard Defendant Velasco taunt plaintiff saying "who's Holt, and after plaintiff responded, he stated "it burns huh?" and then laugh at plaintiff;

    7.    Inmate Love will also provide testimony that he was one of many black inmates who began to bang on their holding cell and holding cage door and scream for someone to help plaintiff because plaintiff was begging and crying in agony for help.

    8.    Inmate Love will provide testimony that despite plaintiffs, his or any of the other inmates attemps to get plaintiff medical attention ("help"), Defendant Velasco did nothing to help plaintiff get any medical attention or decontamination.

(ECF No. 167, Motion at 1-3.)

As to inmate Christopher J. Martinez, J-14422, Plaintiff submits the following:

    2.    That plaintiff is in need of Inmate Martinez J-14422 to provide testimony in this matter as an unwilling direct "eye and ear witness" to the failure to decontaminate deliberate indifference to a serious medical need claim against Defendant Velasco in this matter.

    3.    Inmate Martinez will provide testimony that on 4/9/07 he was a California State prisoner confined at California Correctional Institution, Facility 4A, Housing Unit 3, who was also a subject to a coordinated tactical cell searches and cell extractions of all black inmates in housing unit 3, by correctional officers at the facility;

    4.    Inmate Martinez will provide testimony that he was one of several black inmates (to include plaintiff) who were being held in a clinic holding 121 cell adjacent to plaintiff's holding cell after he was also removed from his assigned cell with a use of force on 4/9/07;

    5.    Inmate Martinez will provide testimony that he heard plaintiff crying, screaming, begging and pleading the clinic control booth officer (Defendant Velasco) for medical attention and decontamination due to the adverse effects that plaintiff's prolonged exposure to the chemical force was having on plaintiff;

6. Inmate Martinez will provide testimony that he was one of several inmates, being held at the 4A clinic, who banged on the holding cell and holding cage doors and yelled for someone to help plaintiff because plaintiff was crying and begging in agony for help.

7. Inmate Martinez will provide testimony that despite plaintiff's repeated pleas for medical attention and decontamination, he saw Defendant Velasco (the control booth officer) just sit in his control booth and ignore plaintiff's pleas for medical attention and decontamination;

8. Inmate Martinez will provide testimony that he heard the clinic booth officer (Defendant Velasco) taunt plaintiff asking "which one of you is Holt," and after plaintiff responded he stated, "It burns huh?" and then laughed at plaintiff;

9. Inmate Martinez will provide testimony that despite his, plaintiff's, and the other black inmates (being held in the adjacent holding cells and holding cages) attempts to get plaintiff medical attention ("help") Defendant Velasco (the control booth officer) did nothing to help plaintiff get any medical attention or decontamination for the adverse reactions that plaintiff was having due to plaintiff's prolonged exposure to the chemical force used on plaintiff.

(ECF No. 168, Motion at 1-3.)

District courts have broad discretion "to limit the number of witnesses on a particular point to avoid cumulative evidence," Lutz v. Glendale Union High School, 403 F.3d 1061, 1071 (9th Cir. 2005), but they must not "sacrifice justice in the name of efficiency," Navellier v. Sletten, 262 F.3d 923, 941 (9th Cir. 2001). "As a general rule, evidence may not be excluded solely to avoid delay." General Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1509 (9th Cir. 1995). Rather, "[u]nder Rule 403, the court should consider the probative value of the proffered evidence and balance it against the harm of delay. General Signal Corp., 66 F.3d at 1509-1510.

This case largely hinges on the credibility of the witnesses and given that Plaintiff is proceeding pro se, the exclusion of any of his witnesses based on cumulative testimony should be handled with due care. Based on Plaintiff's presentation of the fact that will be testified to by inmates Gil, Robertson, Martinez, and Love, the Court finds that they may be an "eye and ear witnesses," and such testimony does not appear it will result in undue delay, a waste of time, or the needless presentation of cumulative evidence. The Court is satisfied that the written declaration of Plaintiff regarding these inmates testimony demonstrates that they witnessed the incident at issue. The

appearance of these witnesses is simply not so excessive as to support a limiting order, even if they witnessed the same evidence and their proposed testimony relates to that same event. See, e.g., Loux v. U.S., 389 F.2d 911, 917 (9th Cir. 1968) (no abuse of discretion in criminal case where district court limited the number of inmate witnesses to five, from ten proposed inmate witnesses). This is particular so given that the Ninth Circuit has repeatedly reaffirmed the principal that pro se litigants are entitled to leniency, particularly in civil rights cases, granting Plaintiff latitude with respect to the three witnesses he seeks to establish the same fact is amply justified. See, e.g., Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the to the filings of pro se litigants, especially when they are civil rights claims field by inmates."); Pouncil v. Tilton, 704 F.3d 568, 574-575 (9th Cir. 2012) (construing pro se complaints liberally protects the rights of pro se litigants to self-representation and meaningful access to the courts, which is particularly important in civil rights cases). The fact that any of these inmates may not have been percipient witnesses to the incident because of their location at the facility is a subject of his credibility that may be explored at trial and resolved by the trier of fact. Based on the record in this case, the Court simply cannot make a definitive finding that the proffered testimony by these witnesses is cumulative.

However, with regard to inmate Robertson, Defendants submit that inmate Robertson was discharged from CDCR custody in 2012 and his current whereabouts are unknown. Plaintiff submits that inmate Robertson's CDCR inmate number is T-43555. However, the Court's review of the California Department of Corrections and Rehabilitations data bank reveals that the CDCR inmate number belongs to a different prisoner than inmate Robertson. Accordingly, on this basis, Plaintiff's request for the attendance of the inmate Robertson is DENIED, without prejudice.[2,3]

---

[2] If inmate Robertson is no longer incarcerated, Defendants are correct that the trial scheduling order issued September 15, 2015, specifically advised Plaintiff that if he wished to call unincarcerated witnesses who will testify voluntarily, he must inform them of the date and time of trial. As to unincarcerated witnesses who refuse to testify voluntarily, Plaintiff must serve the witness with a subpoena and witness fees of $40 per day, plus mileage. (ECF No. 160, Order at 7-8.) The deadline for Plaintiff to have the United States Marshal serve any unincarcerated witness who refuses to testify voluntarily expired on October 20, 2015. (Id. at 8.)

[3] In addition, if Plaintiff locates and properly serves inmate Robertson, the Court will at that point entertain an objection by Defendants under Federal Rule of Evidence 403 as cumulative.

**II.**

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion for the issuance of a writ of transportation for his presence at trial is GRANTED;

2. Plaintiff's motion for the attendance of inmates Garner, Gil, Love, and Martinez is GRANTED; and

3. Plaintiff's motion for the attendance of inmate Robertson is DENIED, without prejudice; and

4. The Court will issue the necessary transportation orders in due course.

IT IS SO ORDERED.

Dated:   **November 3, 2015**

UNITED STATES MAGISTRATE JUDGE